### UNITED STATES of America
### v.
### 42 JARS, MORE OR LESS, of an article of drug labeled in part "BEE ROYALE CAPSULES".

### Appeal of BEE ROYALE, INC.
### No. 12667.

United States Court of Appeals
Third Circuit.

Argued Feb. 5, 1959.

Decided March 12, 1959.

Milton A. Bass, New York City (Bass & Friend, New York City, on the brief), for appellant.

Jerome D. Schwitzer, Asst. U. S. Atty., Newark, N. J., Alvin Gottlieb, Dept. Health, Education & Welfare, Washington, D. C. (Malcolm Anderson, Asst. Atty. Gen., Chester A. Weidenburner, U. S. Atty., Newark, N. J., on the brief), for appellee.

GOODRICH, Circuit Judge.

This case deals with two points. One is the scope to be given to finality of administrative action. The other has to do with corporate answers to interrogatories under Rule 33.[1]

The points come up in this fashion. In February, 1957, a libel was filed in the United States District Court in Massachusetts alleging that a drug called "Bee Royale Capsules" was misbranded while being held for sale following interstate commerce shipment, in that its label did not bear adequate directions for use.[2] An amendment to the libel was filed in April adding the allegation that the article was a "new drug" which may not be introduced into interstate commerce without an effective application establishing its safety.[3] Bee Royale, Inc., a New York corporation, filed a claim of ownership in the Massachusetts action.

In the meantime, in March, 1957, subsequent to the filing of the libel just described, the Post Office Department issued a fraud complaint against two companies called "Nature Food Centres" and "Nature Food Centres, Inc." of Cambridge, Massachusetts. The charge was that these concerns were obtaining mon-

---

1. Fed.R.Civ.P. 33, 28 U.S.C.A.

2. 21 U.S.C.A. § 352(f) (1) (Supp.1958). Seizure and condemnation of the capsules was sought under 21 U.S.C.A. § 334 (Supp.1958).

3. A "new drug," defined in 21 U.S.C.A. § 321(p) (Supp.1958), can not lawfully be introduced into interstate commerce unless an application designed to establish its safety is "effective" with respect to the drug. 21 U.S.C.A. § 355 (Supp. 1958). Violation of this section subjects the drug to condemnation under section 334.

ey through the mails by fraudulent representations of benefits to be had by taking Bee Royale Capsules.[4] The controversy with the Post Office Department was settled by an agreement on the part of the Nature Food Centres people to withdraw from its advertising several specified claims with regard to the beneficial effects of the capsules.[5] This settlement was in the form of an affidavit signed by Henry Rosenberger, owner of Nature Food Centres and Nature Food Centres, Inc. One paragraph of the affidavit stated that the signer "understands that this affidavit relates exclusively to the proceedings specified * * and its filing will not act as a defense or relieve the undersigned of responsibility for violations of any other statute. * * " Thus ended, so far as we know, the controversy between Mr. Rosenberger's enterprises and the Post Office Department.

In the meantime the Massachusetts case had been removed to the District of New Jersey under 21 U.S.C.A. § 344 (a) (Supp.1958). The claimant moved to dismiss the action basing its motion upon the Post Office's fraud complaint and subsequent settlement. This motion the trial court denied. D.C.D.N.J.1958, 160 F.Supp. 818. Written interrogatories, pursuant to Fed.R.Civ.P. 33, had been served on the claimant, Bee Royale, Inc., by the Government. The claimant objected to all the Government's interrogatories. The only objection now relevant is that of the Fifth Amendment. The district judge rejected the claimant's point that its refusal to answer the interrogatories was privileged under the Fifth Amendment. D.C.D.N.J.1958, 162 F.Supp. 944. Upon the further refusal of the claimant to answer the interroga-

tories he gave a default decree of condemnation under Fed.R.Civ.P. 37(d).

### I. Res Administrata.

 Bee Royale, Inc., readily admits that the orthodox established doctrine of res judicata does not help it in this case. That admission is well founded. The parties were not the same in the Post Office proceeding as they are in this action for seizure. If there is any privity between Bee Royale, Inc. and Mr. Rosenberger's Nature Food Centres, that fact is not disclosed. Neither are the issues the same. The Post Office proceeding was based upon an alleged fraud as the section of the statute cited will show.[6] The condemnation action under the statute already cited is based on misbranding and does not require fraud.[7] Furthermore, there was no "final adjudication" in any ordinary sense of that term in the Post Office proceeding. Mr. Rosenberger filed an affidavit and the charges made against his business concerns were ended so long as his promises were kept. Since there was neither privity of parties, identity of issues nor final adjudication there is not anything in the two proceedings that even faintly resembles the basis for res judicata. See Restatement, Judgments, § 1 (1942); VonMoschzisker, Res Judicata, 38 Yale L.J. 299, 300 (1929).

 The common element in the two proceedings has to do with the claim of alleged benefits to be derived from the consumption of Bee Royale Capsules. Based upon this common factor the appellant urges us that the court should create a doctrine known as "res administrata." It points out the confusion which may be created in the mind of a citizen by finishing up one matter with

---

4. This action was based upon 39 U.S.C.A. §§ 259, 732 (1928).

5. The claims agreed to be withdrawn were that:
"1. it will 'rejuvenate failing or worn-out glandular activities in human beings';
"2. it constitutes 'a fountain of youth' and a 'restorer of sexual vigor', or that it will restore sexual vitality to impotent persons;

"3. it will grow hair on bald heads or where the hair is thinning;
"4. it will restore youthful sex functions to women in menopause;
"5. it will insure good health to users."

6. See note 4, supra.

7. United States v. Dotterweich, 1943, 320 U.S. 277, 281, 64 S.Ct. 134, 88 L.Ed. 48; Alberty Food Products v. United States, 9 Cir., 1952, 194 F.2d 463, 464.

one department of Government and then finding that he is not out of difficulty with another department. So the suggestion is that by the adoption of the proposed rule of "res administrata" the right hand of Government will be conclusively presumed to know what its left hand has done. An adjudication, or a settlement, or a ruling or whatever by one administrative agency will end all matters relating to that general question, whatever other departments or statutes are involved.[8] We take it that this is to be the effect regardless of any privity of parties and regardless of departments, commissions or agencies involved. And perhaps regardless, too, of any consent given by a party in conflict with a Governmental agency that the settlement of his case is limited to that controversy only.[9] A benevolent Uncle Sam is, as the cartoons show him, to be treated as a unified individual with the addition of a degree of omniscience not accorded to him by anyone before. Furthermore, all his citizens, both natural and corporate, are included in the family of his children thus to create privity, or something akin to it, between them.

It is hardly necessary to add that a court cannot swallow any such broad proposition as this. Yet such a broad assertion would be necessary if the appellant were to get any help here.

That the administrative process has created difficulties for citizens in their relation to Government is a truism.[10] The judicial control of agency action was a subject of thoughtful consideration for a long time both by the Congress and the American Bar Association. This consideration resulted in the Administrative Procedure Act of 1946, 5 U.S.C.A. §§ 1001–1011 (Cum.Supp.1949), and gave a standard for court supervision of administrative action. There is a growing recognition of the doctrine of res judicata as applied to action by administrative tribunals.[11] It takes fifty-one pages in Professor Davis' book on administrative law to discuss it.[12] We shall, no doubt, have growth in this area. But the growth will come step by step; at least it will if courts are to be in charge of it.

Furthermore, while there may be cases where the administrative process works hardship, this is not one of them. As indicated above, there is not a single fibril to connect these two pieces of Government procedure except certain claims made on behalf of that product known as Bee Royale jelly.[13]

## II. The Unanswered Interrogatories.

We think it clear that if Judge Hartshorne was correct in overruling the claimant's appeal to the Fifth Amendment as a protection against answering the interrogatories that the imposition of the judgment against it was within

8. But cf. United States v. Radio Corp. of America, 1959, 357 U.S. 918, 78 S.Ct. 1359, 2 L.Ed.2d 1362, reversing D.C.E.D. Pa.1958, 158 F.Supp. 333.

9. Appellant says that the agreement between the Post Office Department and the Nature Food Centres people is binding on other executive agencies of Government. But appellant evidently asserts that it should not be bound by the agreement, or at least that portion of it which waives the agreement as a defense to violations of other statutes. According to appellant, privity is a one way street.

10. E. g., see the Hoover Commission Task Force Report on Regulatory Commissions (1949); Jackson, The Supreme Court in the American System of Government 50–51 (1955). See also with a happier but nonetheless pungent approach Parkinson, Parkinson's Law (1957).

11. Compare United States v. Five Cases . . . of Capon Springs Water, 2 Cir., 1946, 156 F.2d 493, with United States v. Willard Tablet Co., 7 Cir., 1944, 141 F.2d 141, 152 A.L.R. 1194. Both of these cases are clearly distinguishable from the case at bar. See also Kleinfeld and Goding, Res Judicata and Two Coordinate Federal Agencies, 95 U.Pa.L. Rev. 388 (1947); Davis, Administrative Law 579–80 (1951).

12. Davis, Administrative Law 563–613 (1951). Other references are listed in Gellhorn and Byse, Administrative Law 1183, n. 1 (1954).

13. See United States v. 3963 Bottles, etc., D.C.E.D.Ill., 172 F.Supp. 470.

the court's discretion. Fed.R.Civ.P. 37 (d).[14]

■ Bee Royale, Inc. does not claim that it, as a corporation, can raise the question of the constitutional provision of freedom from disclosure as applied to it. Its argument concedes that the corporation itself may not claim the Fifth Amendment. United States v. White, 1944, 322 U.S. 694, 64 S.Ct. 1248, 88 L. Ed. 1542; Wilson v. United States, 1911, 221 U.S. 361, 31 S.Ct. 538, 55 L. Ed. 771.

The argument has a further basis, however. It says that answers by a corporation to interrogatories addressed to it must, obviously, be made by some human being on its behalf. Now if the corporate officer who gives the answers, on behalf of the corporation, states things that may involve criminal responsibility, he may find himself involved in a criminal prosecution, especially since liability of corporate officers under the food and drug act is one at peril and no mens rea is involved. See United States v. Dotterweich, 1943, 320 U.S. 277, 64

S.Ct. 134, 88 L.Ed. 48. But personal criminal liability was the very point involved in the White case, supra.

■ This argument would present more possibilities for hardship if the questions were to be answered only by an officer who would be competent to testify on the corporation's behalf, as was the rule prior to the 1948 amendment. See 4 Moore, Federal Practice ¶ 33.07 (2d ed. 1950). Under the amended rule the agent who answers on behalf of the corporation does not need to have personal knowledge. The corporation's attorney will do. 4 Moore, Federal Practice ¶ 33.-07 (2d ed. 1950).

■ But we are getting into unnecessary difficulties here. The Fifth Amendment plea is a personal one and a corporation cannot take advantage of it. That is really all that is involved as this case came to the district court and as it comes to us. Accord: United States v. 48 Jars, etc., D.C.D.C.1958, 23 F.R.D. 192.

The judgment of the district court will be affirmed.

14. In Societe Internationale v. Rogers, 1958, 357 U.S. 197, 78 S.Ct. 1087, 2 L. Ed.2d 1255, the Supreme Court modified district court action taken under Rule 37(b). That case was one of extreme hardship because the plaintiff had done all in its power to obey the court order but was frustrated in its efforts to comply completely since Swiss law prevented it from doing so.