APACHE CORPORATION, Apache-Beals Corporation, Plaintiffs,

v.

Thomas H. McKEEN; William F. Barnes; Benson Steel, Inc.; Lakeside Trading, Inc.; Cliffside Trading, Inc.; Intercity Trading, Inc.; Morbil Trading Corporation; Olympic Trading, Inc.; Commercial Metals Company, Inc.; Arno Kahn; Brooks Abbott; Comsteel Products, Inc.; Commercial Steel Products Company; Daniel Wapner; Martin Enterprises, Inc.; Muriel Martin; Newman Steel, Ltd., formerly Newman Steel Warehouse, Ltd.; Sigmund R. Taube; Canadian Steel Sales, Ltd.; Bert J. Cohen; Rod Metals, Inc.; Robert Wolfe; The Kent Steel Products, Ltd.; Butler Steel Corporation; Morey Gelber; B & T Diversified Steel Products, Inc., formerly 280696 Ontario Limited; Acra-Pierce, Ltd.; and William H. Rawson, Defendants.

No. CIV–79–894C.

United States District Court, W. D. New York.

Jan. 7, 1982.

Duke, Holzman, Yaeger & Radlin, Buffalo, N. Y. (Gregory P. Photiadis, Buffalo, N. Y., of counsel), for plaintiffs.

Kavinoky, Cook, Sandler, Gardner, Wisbaum & Lipman, Buffalo, N. Y. (K. Michael Sawicki, Buffalo, N. Y., of counsel), for defendant Sigmund Taube.

CURTIN, Chief Judge.

This is a motion to compel discovery in connection with a civil case brought under the RICO [Racketeer Influenced and Corrupt Organization] Statute, 18 U.S.C. § 1961 *et seq.*, whereby the plaintiffs allege the existence of a criminal enterprise involving several specialty steel companies. Plaintiffs seek to compel defendant Sigmund Taube to produce corporate records which he may have in his possession con-

cerning several corporate entities: Lakeside Trading, Inc.; Cliffside Trading, Inc.; Intercity Trading, Inc.; Morbil Trading, Inc.; and Olympic Trading, Inc., from the years 1973 to 1976. Additionally, they seek to compel from Mr. Taube the records of Diversified Consultants, a partnership which preceded the formation of Lakeside Trading, Inc., as well as a memorandum prepared by the Toronto law firm of Goodman and Carr concerning the formation and organization of Lakeside Trading, Inc.

Mr. Taube resists production of these documents on the basis of his fifth amendment privilege against self-incrimination. Through his attorney, he claims that the plaintiffs have failed to show that Taube was in any way connected with these entities or that he holds the records in a corporate capacity. At the same time, Mr. Taube has invoked his fifth amendment privilege and has refused to answer any questions regarding his representative status with these corporations. Further, he claims that many of the documents requested by the plaintiffs are personal, as opposed to corporate documents, and are therefore not subject to production.

The plaintiffs have submitted a series of documents and exhibits which demonstrate Taube's connection to Diversified Consultants, as well as Lakeside and Cliffside Trading. Attached to the affidavit of Emanuel Duke (Document No. 83) are accompanying exhibits linking Taube to these corporate entities. The 1974 Internal Revenue Service tax return filed by Lakeside Trading, Inc., lists Taube as vice president of the corporation, holding 33 percent of the corporate stock and receiving $36,000 in annual compensation (Document No. 83, Exhibit E). The payroll records of Cliffside Trading, Inc., record Mr. Taube as an employee receiving $6,000 per month in salary (Document No. 83, Exhibit F). The signature cards of the M & T Bank signed by Mr. Taube show him to be a trustee of the Cliffside Trading Profit Sharing Plan and the Cliffside Trading Purchase Money Plan (Document No. 83, Exhibit I). Further, Mr. Thomas McKeen, president of both the Lakeside and Cliffside corporations, stated during an Internal Revenue investigation that Taube was vice president of both corporations, owned one-third of the stock in both corporations, and was an employee of both corporations (Supplemental Affidavit in Support of Plaintiffs' Motion to Compel Production of Documents, Document No. 201, Exhibit A, p. 2).

Concerning Diversified Consultants, plaintiffs contend that Taube was a partner with Thomas McKeen in this entity. Plaintiffs point to a joint bank account in the names of McKeen and Taube in which a check payable to Diversified Consultants was deposited. This check was endorsed with both the names of Sigmund Taube and Thomas McKeen (Document No. 201, Exhibit F). Additionally, Burt Cohen, president of Canadian Steel Sales, paid commissions to Diversified Consultants and testified that he believed Taube was either an employee or owned the company (Document No. 201, Exhibit G). Finally, Thomas McKeen stated during an Internal Revenue investigation that Taube was a partner in name only in Diversified Consultants and that the Diversified partnership was the predecessor to Lakeside Trading, Inc. (Document No. 201, Exhibit B).

Given these facts, it is impossible to reconcile the defendant's claims that there has not been any showing of Taube's connection with these business entities. Rather, it seems clear that Taube was a corporate officer of the Lakeside and Cliffside corporations, and it also seems apparent that Taube was a partner with Thomas McKeen in Diversified Consultants. Concerning Olympic Trading Co., Inc.; Morbil Trading Co., Inc.; or Intercity Trading Co., Inc., the plaintiffs have shown no relationship between defendant Taube and these entities.

Mr. Taube also employs another theory to prevent production of the requested documents. He argues that any production, whether it be of personal or corporate records, cannot be compelled because the very act of producing the documents would be a "testimonial act." Since one of the elements of the RICO criminal statute is to

**462**

demonstrate a defendant's association with a criminal enterprise, *United States v. Morris*, 532 F.2d 436 (5th Cir. 1976), Taube claims that even a tacit admission that he possesses the documents could prove one of the elements under the criminal portion of the statute. Thus, Taube argues that the fifth amendment privilege should be available to him even if it can be shown that he holds the records in a corporate capacity.

 Nonetheless, it has been long established that corporate documents are not protected by the fifth amendment. *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), and that a corporate officer may not refuse to produce corporate records based upon a claim of privilege against self-incrimination, even if the records may incriminate the corporation or the officer. *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 316 (2d Cir. 1979). Defendant Taube suggests that the United States Supreme Court's decision in *Albertson v. Subversive Activities Control Board*, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965), which involved the registration of Communist Party members and their potential criminal liability by the act of registration, is applicable here. But in this case, the corporate nature of the documents sought is of controlling significance. Taube's relationship as a corporate officer of the Lakeside and Cliffside entities is amply demonstrated, and the possibility that the documents may incriminate him under the criminal portion of the RICO statute is not a recognized exception to the long-accepted doctrine concerning the unprivileged nature of corporate documents. Similarly, Taube's relationship to Diversified Consultants as a partner does not afford fifth amendment protection to any partnership documents he may have in his possession concerning this business entity. *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).

 The United States Court of Appeals for the Second Circuit has determined that a custodian's duty to produce corporate records called for in a valid subpoena or summons extends beyond the mere production or non-production of documents.

> [W]hen the agent fails to produce documents that are the subject of a valid summons or subpoena, if called before a court, [the custodian] must give sworn testimony that he does not possess them.

*United States v. O'Henry's Film Works, Inc., supra* at 318. Additionally, a corporate custodian who produces corporate documents may be called upon to identify the documents he does produce "because 'testimony auxiliary to the production is as unprivileged as are the documents themselves.'" *United States v. O'Henry's Film Works, Inc., supra* at 318, *quoting United States v. Austin-Bagley Corp.*, 31 F.2d 229, 234 (2d Cir. 1929). These two types of testimony have been determined to be unprivileged because the non-production of documents or the identification of corporate documents produced "merely makes explicit what is implicit in the production itself." *United States v. O'Henry's Film Works, supra* at 318, *quoting Curcio v. United States*, 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957). Since these two forms of testimony auxiliary to the production of corporate documents are unprivileged, the necessary prerequisite act of production (or non-production) of corporate documents in and of itself cannot be considered privileged under the fifth amendment.

Although "[t]he act of producing evidence in response to a subpoena ... has communicative aspects of its own, wholly aside from the contents of the papers produced," *United States v. Fisher*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1975), the United States Supreme Court also noted the distinguishing characteristics of corporate records:

> Moreover, *Wilson v. United States, supra; Dreier v. United States*, [221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911)]; *United States v. White, supra; Bellis v. United States, supra*; and *In re Harris*, [221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 732 (1911)], the

custodian of corporate, union, or partnership books or those of a bankrupt business was ordered to respond to a subpoena for the business' books even though doing so involved a "representation that the documents produced are those demanded by the subpoena," *Curcio v. United States*, 354 U.S. at 125 [77 S.Ct. at 1150].

*Id.* at 413, 96 S.Ct. at 1582. The Court further stated that:

> In these cases compliance is required even though the books have been kept by the person subpoenaed and his producing them would itself be sufficient authentication to permit their introduction against him.

*Id.* at 413, n.14, 96 S.Ct. at 1582, n.14.

Concerning the corporate entities of Lakeside, Cliffside, and the partnership of Diversified Consultants, this is not a situation similar to *In re Katz*, 623 F.2d 122 (2d Cir. 1980), as defendant Taube suggests. That case involved a grand jury subpoena directed to an attorney which raised issues of attorney-client privilege surrounding the production of documents requested by subpoena. Here, there is no claim of attorney-client privilege made concerning these documents. Further, in that case, Katz was originally believed to be an employee of one Benjamin Jamil, and in fact, Katz was Jamil's personal attorney as well as an attorney for one of a series of corporations under grand jury investigation. The court found that under these circumstances, the "act of turning over the documents would constitute a communication by Katz to the effect that [Jamil] was connected with the corporations," *id.* at 126, but noted that the government did not know the identity of the corporations nor Jamil's relationship to them. This is not the case here, as the existence of Lakeside Trading, Inc., Cliffside Trading, Inc., and Diversified Consultants is well established and Taube's relationship to these entities is equally apparent.

█ The court is mindful of the circumstances surrounding this case and Mr. Taube's right to invoke his fifth amendment privilege in responding to the discovery questions propounded by the plaintiffs concerning the entities in question. In this respect, the court is inclined to adopt the policy used when corporate officials refuse to respond to interrogatories, claiming a fifth amendment self-incrimination privilege. This is accomplished by the appointment of "an agent who could, without fear of self-incrimination, furnish such requested information as was available to the corporation." *United States v. 3963 Bottles, More or Less, of an article of drug labeled in part: "* * * ENERJOL DOUBLE STRENGTH * * *," Owen Laboratories, Inc.*, 265 F.2d 332, 336 (7th Cir. 1959); *Priebe v. World Ventures, Inc.*, 407 F.Supp. 1244 (C.D.Cal.1976); *see also United States v. Kordel*, 397 U.S. 1, 8, 90 S.Ct. 763, 767, 25 L.Ed.2d 1 (1970). In these situations, the personal privilege against self-incrimination is protected, while the corporation may still be obligated to produce the required information.

> This the corporation can easily do under its broad corporate powers, using even its attorney, for instance, whose duty it would then be to "furnish such information as is available to the party"—the sum total of the corporate information. [Citation omitted.]

*United States v. 42 Jars ... "BEE ROYALE CAPSULES * * *,"* 162 F.Supp. 944, 946 (D.N.J.1958); *aff'd* 264 F.2d 666 (3d Cir. 1959); *United States v. 48 Jars, More or Less*, 23 F.R.D. 192 (1958).

By appointment of a corporate agent to respond to interrogatories propounded by the plaintiffs, discovery may be more effectively accomplished concerning the corporations in question, while the fifth amendment privilege of officers such as Mr. Taube will remain protected. Accordingly, when counsel for the Lakeside and Cliffside corporations receives a copy of this decision, counsel should immediately consult with representatives of these entities so that such an individual may be identified by those corporations and transmit the name of the appropriate individual to the plaintiffs.

Concerning Olympic, Morbil, and Intercity Trading, the plaintiffs have failed to show any relationship between the corporations and Mr. Taube. Given the lack of facts linking Mr. Taube to these entities and his claims of privilege, the court cannot compel Mr. Taube to produce corporate documents, if any, of these entities. *See In re October 1969 Grand Jury*, 435 F.2d 350 (7th Cir. 1970). This does not preclude the plaintiffs from directing their discovery efforts to an authorized agent of these corporations whose custodial obligations include the duty to produce corporate records.

Finally, plaintiffs seek to compel from Mr. Taube a memorandum written by the law firm of Goodman and Carr. The plaintiffs argue that production is warranted because of a waiver of attorney-client privilege. Defendant Taube states that there is no showing that the document is in Mr. Taube's possession, and from the pleadings, it is unclear as to who actually has possession of the document. Further, from the pleadings, defendant contends that the document is a personal record of Mr. Taube's.

The court in *Grand Jury Subpoena Duces Tecum v. United States*, 657 F.2d 5, 8 (2d Cir. 1981) recently stated that:

> [I]n determining whether the documents are personal or corporate, the issue is whether by requiring their production, the witness is being compelled to testify against himself. The following nonexhaustive list of criteria is relevant to this determination: who prepared the document, the nature of its contents, its purpose or use, who maintained possession and who had access to it, whether the corporation required its preparation, and whether its existence was necessary to the conduct of the corporation's business.

In this case, virtually all of this information except for who prepared the document remains unknown or ambiguous. Until the plaintiffs can demonstrate in some form further facts related to this memorandum, the court cannot compel anyone to produce it. If and when such a demonstration is made, the other issues of attorney-client privilege and waiver may properly be addressed.

For the foregoing reasons, defendant Taube is required to produce to the plaintiffs any corporate or partnership documents in his possession related to Lakeside Trading, Inc., Cliffside Trading, Inc., and/or Diversified Consultants. Counsel for Lakeside Trading, Inc., and Cliffside Trading, Inc., is to consult with representatives of these entities so that an individual may be identified to respond to plaintiffs' interrogatories without fear of self-incrimination.

This order shall be complied with on or before February 9, 1982.

So ordered.