**Meyer BILLER, Petitioner–Appellee,**

v.

**Raymond LOPES, Commissioner of Corrections, Respondent–Appellant.**

No. 261, Docket 87–2165.

United States Court of Appeals, Second Circuit.

Argued Sept. 21, 1987.

Decided Nov. 19, 1987.

Steven M. Sellers, Asst. State's Atty., Office of the Chief State's Atty., Wallingford, Conn., for respondent-appellant.

M. Mitchell Morse, New Haven, Conn. (University of Bridgeport Law School, Bridgeport, Conn.), for petitioner-appellee.

Before OAKES and KEARSE, Circuit

Judges, and BONSAL, District Judge.*

OAKES, Circuit Judge:

This appeal is by the State of Connecticut from the grant of a petition for a writ of habeas corpus by the United States District Court for the District of Connecticut, Alan H. Nevas, Judge. Petitioner Biller successfully challenged the legality of his 1982 conviction on charges of interfering with a police officer on the basis that the denial of his *in limine* motion to preclude use on cross-examination of a 1976 conviction deprived him of the opportunity to testify in the 1982 case, even though his 1976 conviction was subsequently overturned on Fifth Amendment grounds by the Connecticut State Supreme Court. *State v. Biller*, 190 Conn. 594, 462 A.2d 987 (1983).[1] We affirm the decision of the district judge granting the writ, reported as *Biller v. Lopes*, 655 F.Supp. 292 (D.Conn. 1987).

## FACTS

This appeal requires us to consider three separate judicial proceedings: two criminal trials in the Connecticut state courts, and the habeas petition in the federal district court. Petitioner Biller is a former licensed public adjuster, and his first criminal trial was on charges relating to two suspicious fires which heavily damaged a New Haven apartment building in April of 1975. Biller had been retained by the closely-held corporation which owned the buildings to adjust claims arising out of the fires. Taking the evidence in the light most favorable to the State, Biller obtained from the insureds two blank but signed proof of loss forms for each fire, and used the forms to submit excessive claims, inflated to more than cover his fee of 10% of the settlement. He was charged with falsely certifying two oaths, in violation of Conn.Gen.Stat. § 53–368, and was convicted after a jury trial. *See State v. Biller,*

190 Conn. at 595–96, 462 A.2d at 989 (*"Biller I"*). On his appeal of that conviction to the Connecticut Supreme Court, Biller successfully argued that the admission of several statements made by him before a one-man investigative grand jury violated his Fifth Amendment rights, in that he was compelled to make statements in his "corporate capacity" over his consistent assertion of the constitutional privilege against self-incrimination. 190 Conn. at 601, 462 A.2d at 991.

The second state court trial occurred in 1982, after Biller was arrested and charged with acting as a public adjuster without a license and interfering with a police officer at the scene of a New Haven house fire. An arson control assistant inspector, assigned to the Connecticut State's Attorney's office, saw Biller approach the homeowners and provide them with several documents, which they signed and returned to him. The inspector then overheard Biller tell the homeowners that he would contact their insurance company, and quickly thereafter ordered Biller's arrest. Before he was taken into custody Biller tore up the documents he had received, and then resisted the efforts of the inspector and another officer to search his pockets. *See State v. Biller*, 5 Conn.App. 616, 618–19, 501 A.2d 1218, 1220 (1985), *cert. denied*, 199 Conn. 803, 506 A.2d 146, *cert. denied*, —— U.S. ——, 106 S.Ct. 3296, 92 L.Ed.2d 711 (1986) (*"Biller II"*).

At this second trial, Biller moved *in limine* and at the close of his case to preclude the State from using his *Biller I* conviction to impeach his testimony should he take the stand in his defense. The motion was based upon the fact that the conviction was on appeal at the time of his *Biller II* trial. This basis was not articulated on the record, although it apparently was discussed in chambers when the motion was made initially. The motion was denied and Biller convicted of interfering

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. On remand for a new trial, the charges were dismissed by a superior court judge who found that Biller could not as a matter of law have committed the crimes for which he was charged. *State v. Biller*, No. 22265, Memorandum of Decision on Motion to Dismiss (Superior Court, Judicial District of New Haven, August 15, 1984).

with a police officer. The appellate court which decided *Biller II* did not pass on the constitutional argument made here, but merely held that the trial court was within its discretion in admitting evidence of a prior conviction for impeachment purposes despite the pendency of an appeal, *see State v. Schroff,* 3 Conn.App. 684, 689, 492 A.2d 190, 193 (1985), provided that defense counsel is permitted to point out the pendency of the appeal to the jury. *See Biller II,* 5 Conn. App. at 623–24, 501 A.2d at 1222.

It is important to point out that on appeal here the State concedes, as it did in the district court, that concerns of "State comity and exhaustion" are satisfied because Biller did present his constitutional claims to the Connecticut Appellate Court in *Biller II.* Even though the court did not consider them directly, it clearly could have done so. Under Connecticut procedure an appellate court may entertain claims not preserved in the trial court if they "arose subsequent to the trial," Conn. Practice Book § 4185, or "where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal." *State v. Evans,* 165 Conn. 61, 70, 327 A.2d 576, 581 (1973). Here Biller's Fifth Amendment claim became more concrete after the *Biller II* trial, when the Connecticut Supreme Court reversed *Biller I. See* Appellant's Brief on this appeal, at 2 n. 2.

After *Biller I* was reversed and dismissed and the Connecticut appellate court affirmed the *Biller II* conviction, the Connecticut and the United States Supreme Courts denied review and petitioner filed this habeas action under 28 U.S.C. § 2241. Biller alleged that the state conviction in *Biller II* was the fruit of compelled testimony obtained in *Biller I* in violation of the Fifth and Fourteenth Amendments, that the conviction was also based on the impeachment use of the constitutionally unreliable *Biller I* conviction in violation of due process, and that the state trial judge violated due process by considering the *Biller*

*I* conviction in imposing the maximum sentence on the petitioner in *Biller II.* The federal district court granted the habeas corpus petition for Fifth Amendment reasons, and did not decide the other two claims, although the due process claim is kept alive in the petitioner's brief. *See Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

## DISCUSSION

The State's principal argument is that the district court's conclusion that Biller suffered prejudice is entirely speculative, in that Biller never took the stand, never presented his constitutional arguments to the trial court, and never made an offer of proof as to what his trial testimony would have been. The State also contends that it made neither direct nor derivative use of the *Biller I* conviction because the prior conviction was never entered into evidence. In the alternative, the State claims that any threatened derivative use of the invalid prior convictions by the State was harmless beyond a reasonable doubt.[2]

The State maintains that *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed. 2d 443 (1984), controls this case. *Luce* held that when a defendant does not take the stand and testify, "[a]ny possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative." *Id.* at 41, 105 S.Ct. at 463; *accord, United States v. DiPaolo,* 804 F.2d 225, 233 (2d Cir.1986); *United States v. Weichert,* 783 F.2d 23, 25 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 117, 93 L.Ed.2d 64 (1986). However, as the district court pointed out, "[t]he *Luce* decision does not deal with an error of constitutional dimension." 655 F.Supp. at 301. Indeed, Chief Justice Burger's opinion for the court in *Luce* carefully distinguished *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), and *New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979), both

---

**2.** The State also argues that the district court erred in admitting into evidence sua sponte the petitioner's affidavit as to what his testimony would have been had he testified in his state

trial. We do not reach that point since we put no reliance whatsoever on the affidavit in question.

of which involved Fifth Amendment challenges to state court rulings that operated to dissuade defendants from testifying, on the basis that *Brooks* and *Portash* did not involve "a federal court's preliminary ruling on a question not reaching constitutional dimensions—such as a decision under [Fed.R.Evid.] Rule 609(a)." 469 U.S. at 42–43, 105 S.Ct. at 463–64. Since a 609(a) ruling requires a court to balance the probative value of admitting the conviction against the prejudicial effect to a defendant, a reviewing court would be totally handicapped in making the required harmless error determination absent the defendant's testimony. *See* 469 U.S. at 43, 105 S.Ct. at 464 (Brennan, J., concurring). However, where the *in limine* ruling depends on legal and not factual considerations, the requirement that the defendant actually testify at trial to preserve the admissibility issue for appeal "might not necessarily be appropriate." *Id.* at 44, 105 S.Ct. at 464.

On November 12, 1982, prior to the *Biller II* trial, Biller filed a written motion stating that he had been convicted in the summer of 1979 of two counts of falsely certifying an oath in violation of Connecticut General Statutes § 53–368, and that he "desires to testify in his own defense in the instant matter." The motion went on to state that "[i]f this Court should rule that the State would be allowed to impeach Mr. Biller with those previous convictions, he would be deterred from testifying in his own defense, thus depriving him of the most effective witness available to present a defense in the instant charges." The motion then referred to the Connecticut legal standard, requiring the judge to balance a conviction's probative value against its prejudicial effect, and expressly noted that the motion was also based upon "such further reasons as may become apparent upon the hearing of this motion." The motion concluded with the request "that this Court rule, prior to trial, that the State may not use these prior convictions to impeach Mr. Biller when he elects to testify in his own defense." The motion was denied with little discussion, though the court did refer on the record to a discussion "in chambers this morning." The court said it would allow the State to introduce the prior convictions in evidence should he testify. Biller's counsel, after taking an exception, said, "I would indicate that the effect of that would be to deter Mr. Biller from testifying in his own behalf."

The matter was raised again in an unrecorded chambers conference near the completion of the defendant's case. Later defense counsel and the trial judge had a further discussion on the record, reaffirming that the threat of impeachment prevented the defendant from testifying. Counsel said, "Your honor had previously ruled that you would allow Mr. Biller to be impeached by his convictions should he take the stand and testify in his own defense. When that ruling was made, Mr. Biller elected not to testify." The court replied,

It is my understanding that he was convicted of a felony some time back *which is now on appeal* on which he faces a term in the state penitentiary, and I indicated to counsel in chambers that if he would take the stand, I would allow the state to use that conviction for impeachment purposes, if he took the stand, and as I understand it, that is standard procedure and I would allow it.

(Emphasis added.)

It was from this evidence that the district court concluded that the trial court's ruling prevented the petitioner from testifying in his state trial in *Biller II.* As the district court found,

The record makes clear that Biller's decision on whether to testify was contingent on the trial court's granting of his motion in limine. However, the record is silent concerning whether Biller made any proffer of his proposed testimony. Ultimately, the *Biller II* trial court denied the motion in limine. As a result of this denial, Mr. Biller decided not to take the stand on his own behalf and risk impeachment by use of the felony convictions.

655 F.Supp. at 295 (citing *Biller II* transcript at 12). Our question is whether, since petitioner did not testify, *Luce* some-

how governs this case, despite its different procedural and substantive posture, so as to render petitioner's federal constitutional claim invalid. The question is complicated by the fact that in *State v. Harrell*, 199 Conn. 255, 506 A.2d 1041 (1986), the Connecticut Supreme Court adopted a state rule similar to that in *Luce*. However, in *Harrell* the Connecticut Supreme Court limited the new rule to future application only, saying "[w]e follow *Luce* prospectively in order that those defendants who have relied on previous decisions of this court that did not require a defendant to testify will not be prejudiced by this rule." 199 Conn. at 267, 506 A.2d at 1047. These earlier decisions included *State v. Hamele*, 188 Conn. 372, 449 A.2d 1020 (1982); *State v. Iasevoli*, 188 Conn. 325, 449 A.2d 996 (1982); and *State v. Nardini*, 187 Conn. 513, 447 A.2d 396 (1982). Because *Biller II* was tried after *Iasevoli* and *Hamele* were decided, and the appeal in *Biller II* was decided in 1985, prior to *Harrell's* adoption of the *Luce* rule, we hold that Biller's constitutional claims were properly before the state courts. We further hold that *Luce* itself did not prevent the consideration of Biller's claims despite the absence of a specific offer of proof.

We must now consider whether the state trial court's error is one which justifies the district court's order of a new trial. As a function of the general principles underlying the issuance by federal courts of writs of habeas corpus directed against state convictions, *see generally Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 2623, 91 L.Ed.2d 364 (1986); *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), the State argues that it is clear that "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979). It reminds us that the claimed error must constitute " 'a fundamental defect which inherently results in a complete miscarriage of justice'." *Id.* at 185, 99 S.Ct. at 2240 (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). The State

urges that there was no such defect here, and, moreover, that the petitioner bore the burden of proving prejudice and failed to meet that burden.

■ While the State is correct as to these legal principles, it is incorrect as to their application in this case. We note first that the district court, after an independent examination of the facts, correctly concluded that the *Biller II* conviction was a fruit of the *Biller I*-compelled testimony, in violation of the Fifth and Fourteenth Amendments. *See Miller v. Fenton*, 474 U.S. 104, 110–11, 106 S.Ct. 445, 449–50, 88 L.Ed.2d 405 (1985). Some of the testimony compelled by the investigative grand jury was used to obtain the *Biller I* conviction, a determination which respondent does not contest. Indeed, that same compelled testimony was found by the Connecticut Supreme Court to have required reversal of the *Biller I* conviction. We also agree with the district court that the earlier *Biller I* conviction had the effect of forcing Biller not to testify in *Biller II*. Even without the petitioner's testimony, the *Biller II* jury announced itself deadlocked, and reached a verdict only after having the Connecticut state equivalent of an *Allen* charge. Surely Biller's testimony in his own defense could have influenced the jury's outcome.

■ Compelled testimony obtained in violation of the privilege against self-incrimination may not be used for the purpose of impeachment. *See New Jersey v. Portash*, 440 U.S. at 458–59, 99 S.Ct. at 1296–97. In *Portash* the Supreme Court very carefully distinguished *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), both of which involved the use of statements concededly taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to impeach a defendant's testimony at trial. The court stated that there was "a crucial distinction between those cases and this one," noting that in *Harris* and *Hass* there was " 'no claim that the statements made to the police were coerced or involuntary.' " 440 U.S. at 458, 99 S.Ct. at

1297 (quoting *Harris v. New York*, 401 U.S. at 224, 91 S.Ct. at 645.) The *Portash* Court went on to say, "As we reaffirmed last Term, a defendant's compelled statements, as opposed to statements taken in violation of *Miranda*, may not be put to any testimonial use whatever against him in a criminal trial." 440 U.S. at 459, 99 S.Ct. at 1297 (citing *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978)). Likewise, compelled testimony cannot be used directly or indirectly in any subsequent criminal case. *See Garner v. United States*, 424 U.S. 648, 653, 96 S.Ct. 1178, 1181, 47 L.Ed.2d 370 (1976); *Lefkowitz v. Turley*, 414 U.S. 70, 78, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973); *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972).

Of course, the State argues that because the compelled testimony itself was not offered against petitioner there was no constitutional violation. But there is no doubt that the compelled testimony helped produce the *Biller I* conviction and, in turn, prevented the petitioner from testifying in his own defense in *Biller II*. As the district court found in this case, "the State made derivative use of a conviction obtained in violation of the Fifth Amendment." 655 F.Supp. at 305–06. This use resulted in the petitioner's decision not to testify in his own behalf.

The State also argues that we should apply a harmless error analysis standard, *see Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), on the basis that mere threatened derivative use of compelled testimony is insufficient to create prejudice, absent either the testimony or a proffer of testimony. The State once again refers to *Luce*, in effect arguing that its ruling suggests a harmless error analysis, and cites *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), where harmless error analysis was applied to the denial of a defendant's right to cross-examination in violation of the Confrontation Clause. But even in *Van Arsdall*, the Court recognized "that some constitutional errors ... are so fundamental and pervasive that they re-

quire reversal without regard to the facts or circumstances of the particular case." *Id.*, 106 S.Ct. at 1437. And, although the *Van Arsdall* Court did not list the use of compelled testimony as an example of such a constitutional error, it did cite specifically to *Chapman*, 386 U.S. at 23, 87 S.Ct. at 827, and its footnote 8, in support of this principle. 106 S.Ct. at 1437. We note that footnote 8 of *Chapman* refers to coerced confessions, *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958); the right to counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); and the right to an impartial judge, *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

 Recently, in *Johnstone v. Kelly*, 808 F.2d 214 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987), this court considered a Sixth Amendment violation in light of *Delaware v. Van Arsdall* and held harmless error analysis inappropriate, saying that "[h]armless error analysis has not been applied to rights that are essential to the fundamental fairness of a trial or that promote systemic integrity and individual dignity." *Id.* at 218. We believe that the use of a conviction obtained by coerced testimony for impeachment purposes satisfies this test, and that such a conviction cannot be used to prevent a defendant from taking the stand in his own defense. As such, it falls within the class of cases noted by Justice Brennan's concurring opinion in *Luce*, in that the constitutional violation in admitting compelled testimony for impeachment purposes is a matter of law, not an issue resting on factual consideration. The district court acted properly in considering the issue despite Biller's failure to testify, and applied the law correctly.

Judgment affirmed.