**John J. McCARTHY, Petitioner,**

v.

**George BRONSON, Respondent.**

Civ. No. H–86–508 (TEC).

United States District Court,
D. Connecticut.

April 19, 1988.

---

John J. McCarthy, pro se., for petitioner.

Frederick W. Fawcett, Asst. State's Atty., Donald A. Browne, State's Atty., Bridgeport, Conn., for respondent.

## MEMORANDUM OF DECISION ON PETITION FOR WRIT OF HABEAS CORPUS

CLARIE, District Judge.

The petitioner is serving an effective prison term of not less than ten nor more than twenty years pursuant to his convictions in the Connecticut Superior Court of the crimes of larceny in the first degree and burglary in the third degree. He brings this petition for a writ of habeas corpus under 28 U.S.C. Section 2254. In his petition, filed *pro se* and *in forma pauperis* on May 1, 1986, the petitioner alleges that the trial court committed constitutional error when it denied his motion to suppress inculpatory statements made while he was in the temporary custody of the Wilton police. He claims that the statements are the fruits of an illegal arrest and were induced by unfulfilled promises of treatment for his drug abuse problem. In an improperly submitted *pro se* "amended petition," he also claims that Hispanics were underrepresented on the jury venire in Fairfield County in violation of his rights to due process and equal protection. Presently pending are the petitioner's motion in opposition to judgment (docket entry 11) and his motion for re-appointment of counsel (docket entry 17). For the reasons set forth below, the petitioner's motions are DENIED, and the petition is DISMISSED.

### I.

District of Connecticut Local Rule 16(a) authorizes the Clerk of the Court to enter an order of dismissal in civil actions in which no action has been taken by the parties for six months. On July 30, 1987, the Clerk entered a judgment of dismissal in this action pursuant to Rule 16. On October 2, 1987, the Court granted the petitioner's motion to rescind the order of dismissal. Accordingly, the petitioner's motion in opposition to judgment is DENIED as moot.

On September 10, 1986, the Court, at the petitioner's request, appointed the Federal Public Defender to represent him. Although the order of July 30, 1987 eventually was vacated, the petitioner filed a grievance against his appointed attorney, Assistant Federal Public Defender Sarah A. Chambers, on or about October 9, 1987. As a result, Attorney Chambers filed a motion to withdraw as petitioner's counsel. The Court granted the motion to withdraw on December 9, 1987. On March 17, 1988, the petitioner filed a motion in which he asks the Court to appoint a different attorney for him in this action. Upon review of the record, the Court finds that it is unnecessary to appoint a new attorney for the petitioner.

In a federal habeas corpus action, the granting of appointment of counsel lies within the discretion of the Court. *See* 18 U.S.C. Sec. 3006A; 28 U.S.C. Sec. 2254, Rule 8(c). The Court need only appoint counsel for qualified indigents when a hearing is required; appointment of counsel at an earlier stage is only necessary if it is in the interest of justice to do so. *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir.1986). The submissions of the respondent demonstrate that no hearing will be necessary in this action and that the petition is subject to summary dismissal. *See* 28 U.S.C. Sec. 2254, Rule 4 (authorizing summary dismissal where petition and attached exhibits show petition not entitled to relief). Accordingly, the petitioner's motion for reappointment of counsel is DENIED.

### II.

#### A. Background

In accordance with 28 U.S.C. Sec. 2254(d), state court findings of fact are afforded a presumption of correctness in federal habeas proceedings. *See, e.g., Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 2602–03, 91 L.Ed.2d 335 (1986);

*Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982). The presumption applies to factual findings made either by a state trial or appellate court. *See Sumner v. Mata*, 449 U.S. 539, 544–47, 101 S.Ct. 764, 767–69, 66 L.Ed.2d 722 (1981). This Court must defer to state court findings of fact unless it finds that one of the factors listed in 28 U.S.C.Sec. 2254(d) is applicable, or the petitioner presents "convincing evidence" which demonstrates that the findings are not supported by the record. *See Rushen v. Spain*, 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983) (per curiam); *Sumner v. Mata*, 455 U.S. at 593, 102 S.Ct. at 1304. In the instant case, the Court has reviewed the submissions of the parties, which include relevant portions of the pretrial transcript. It is apparent that state court findings which are relevant to the issues raised in this petition are either undisputed or supported by the record. Throughout this opinion, the Court adopted the facts as found by the Connecticut Supreme Court. *See Kampshoff v. Smith*, 698 F.2d 581 (2d Cir.1983) (adopting state court findings verbatim).

On June 20, 1980, the defendant was arrested by the Westport police on charges unrelated to those at issue here. Knowing that the defendant was a suspect in certain burglaries that had occurred in Wilton, the Westport police contacted the Wilton police and informed them that the defendant was in custody. The next day, two Wilton police officers spoke with the defendant at the jail in Westport, and then took him for a drive through Wilton, where the defendant incriminated himself in several burglaries, including the one involved in this appeal. More than two weeks later, a warrant was issued for the arrest of the defendant for the instant burglary and larceny. At trial the defendant stipulated that he had committed the theft in question, but denied having the requisite mental state for the crimes charged. He also contested the valuation of the property stolen. The jury found him guilty of the crimes charged.

*State v. McCarthy*, 197 Conn. 247, 248, 496 A.2d 513 (1985).

**B. Petitioner's Inculpatory Statements**

The petitioner claims that his convictions were obtained in violation of his constitutional rights because inculpatory statements made to the Wilton police were the result of an illegal arrest and were elicited after false promises that police would place him in a drug treatment program. Regarding his claim of illegal arrest, the Connecticut Supreme Court found that the petitioner was under the arrest of Westport police, not Wilton police, during his trip through Wilton. The petitioner did not challenge the legality of his arrest by Westport police. The court further found that the petitioner had been given *Miranda* warnings prior to his ride with Wilton police, and that he had consented to accompanying the Wilton police. Given these facts, the court concluded that the petitioner's "claim ... goes not to the legality of his arrest, but to the authority of the Wilton police to hold him in custody pending disposition of the Westport charges" and that the petitioner's statements were not the product of an illegal arrest in violation of the Fourth Amendment. *Id.* at 255–56, 496 A.2d 513.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976) (footnotes omitted); *accord Agee v. White*, 809 F.2d 1487, 1490 (11th Cir.1987). A court need not inquire into the merits of a Fourth Amendment claim unless the petitioner alleges that something impaired his opportunity to litigate the issue. *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir.1978). The record indicates that the Connecticut courts afforded the petitioner ample opportunity to challenge the legality of his temporary detention by Wilton police. To the extent that the petitioner argues that statements made to Wilton police were introduced as fruits of a violation of his Fourth

Amendment rights, he has failed to state a claim upon which federal habeas relief can be granted.

However, a court's inquiry under the Fourth and Fifth Amendments is not identical. *See Lanier v. South Carolina*, 474 U.S. 25, 26, 106 S.Ct. 297, 298, 88 L.Ed.2d 23 (1985); *Dunaway v. New York*, 442 U.S. 200, 217, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 601–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The voluntariness of a confession presents a mixed question of fact and law. *See Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). In determining whether the petitioner's rights under the Fifth Amendment were violated, the Court "may give different weight to the facts as found by the state court and may reach a different conclusion in light of the legal standard." *Sumner v. Mata*, 455 U.S. at 597, 102 S.Ct. at 1306–07. To the extent that the petitioner alleges that his statements were obtained in violation of his Fifth Amendment rights, his claim requires consideration.

The petitioner maintains that Westport and Wilton police impermissibly induced his confession to Wilton police by promising to get him into a drug addiction treatment program. Apparently, the Connecticut Supreme Court understood the petitioner as alleging that police promised to place the petitioner in a drug treatment program in lieu of imprisonment. *See State v. McCarthy*, 197 Conn. at 256, 496 A.2d 513 (citing *Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970)). During the suppression hearing, Officer Gary Tranberg of the Westport police testified that the defendant was a known drug addict and was experiencing drug withdrawl symptoms shortly after his arrest. The following exchange then occurred between defense counsel and Tranberg. Counsel: "Did you ever talk to Mr. McCarthy about anything to the effect that, if he gave you a statement concerning the houses that he burglarized, that you would help him get into a drug program or help him in any way concerning [his] drug habit?" Tranberg: "We had indicated to him that if he did cooperate with us, we would make that indication to the prosecutor and also indicate the fact that he was a drug addict and he did need some medical treatment for his drug addiction. I, certainly, never said that I was going to get him into a drug program per se." Tranberg also testified that the defendant was told that if he cooperated with respect to the Westport crime, for which he had been arrested, no other warrants would be issued "[a]s far as the town of Westport is concerned." This conversation with the defendant took place on the morning of June 20, 1981, the day before the defendant confessed to the Wilton burglaries. The defendant generally corroborated Tranberg's account, but also testified that the Wilton police "promised me the same thing the Westport Police promised me," that being "[n]o warrants. And then when I went to court, they and the Westport Police would be there to request the Prosecutor that I be given a drug program." The Wilton police denied making any such promises.

*State v. McCarthy*, 197 Conn. 256–57, 496 A.2d 513.

The Connecticut Supreme Court concluded that trial court record did not establish that Wilton police made any promises. *Id.* at 258, 496 A.2d 513. Regarding the Westport police, however, the court stated:

The situation differs as to the promises by the Westport police, concerning which there was no factual dispute at trial. It is clear, however, that the trial court could have found that the defendant understood those promises to relate only to his interaction with the Westport police and not his subsequent dealings with the Wilton police. When he testified at the suppression hearing, the defendant stated that the Westport police "promised me that if I had agreed to help them with any investigation and any burglaries *pertaining within Westport*, that they would take me to the hospital so I could get medication for my withdrawals. And when I went to court for this charge, they would see that I would be given a drug program." [emphasis in original].

Similarly, Tranberg's testimony concerning the promise that no other warrants would be issued against the defendant aside from that for which he was already in custody was qualified to apply only *"[a]s far at the Town of Westport is concerned."* [emphasis in original]. Given the limits of these promises, it would have been fair for the trial court to conclude that they had no impact on the defendant's decision to confess to having committed crimes in Wilton....

Thus neither the nature of the defendant's custody nor any promises made to him required a finding that the defendant's confession was inadmissible, and the trial court did not err in denying his motion to suppress.

*Id.* at 258–59, 496 A.2d 513 (footnotes omitted).

"The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986). The record before this Court is devoid of any facts which suggest that the petitioner's statements to Wilton police were the result of governmental coercion which caused him to surrender his Fifth Amendment rights. Unquestionably, the petitioner was "in custody." *See California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam). It also seems that the actions of Wilton police should be construed as "interrogation" within the meaning of the Fifth Amendment. *See Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *but see* Transcript of Suppression Hearing at 146 *et seq.* (suggesting that petitioner spontaneously began to point out houses he had burglarized while riding through Wilton). However, the Court finds that the totality of the circumstances in the instant case demonstrate that Wilton police obtained the petitioner's statements in a manner consistent with the Constitution. *See Miller v. Fenton,* 474 U.S. at 117, 106 S.Ct. at 453.

The petitioner was read his *Miranda* rights before meeting with Wilton police. Apparently, the petitioner has never claimed that he did not understand the *Miranda* rights; thus, any coercion must be inherent in other circumstances surrounding his meeting with Wilton police. *See Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 857–58, 93 L.Ed.2d 954 (1987); *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987); *see also Oregon v. Elstad,* 470 U.S. 298, 307, 105 S.Ct. 1285, 1292, 84 L.Ed.2d 222 (1985) ("Failure to administer *Miranda* warnings creates a presumption of compulsion.") The Connecticut Supreme Court found that he consented to being placed temporarily in their custody. *Cf. Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). The determination of whether the petitioner consented to this "seizure" of his person by Wilton police is a factual one which is entitled to a presumption of correctness. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *United States v. Rojas,* 783 F.2d 105, 107 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 195, 93 L.Ed. 2d 127 (1987). The petitioner's voluntary consent constituted a waiver of his Fourth Amendment rights. *See United States v. Legato,* 480 F.2d 408, 413 (5th Cir.), *cert. denied,* 414 U.S. 979, 94 S.Ct. 295, 38 L.Ed. 2d 223 (1973); *see also State v. McCarthy,* 197 Conn. at 255–56, 496 A.2d 513 (petitioner claims Wilton police authority to arrest; supreme court found he voluntarily consented to change in custody).

After the petitioner voluntarily accompanied them, Wilton police could question him until he invoked his *Miranda* rights. *Cf. Michigan v. Mosley,* 423 U.S. 96, 102–03, 96 S.Ct. 321, 325–26, 46 L.Ed.2d 313 (1975); *United States v. Recalde,* 761 F.2d 1448, 1457 (10th Cir.1985). However, while the question of the petitioner's consent to being placed in the custody of the Wilton police is a question of fact, the voluntariness of his waiver of his Fifth Amendment rights presents an ultimate issue of law which this Court must determine anew after examining the facts as found by the Connecticut Supreme Court. *See Miller v. Fenton,* 474 U.S. 117–18, 106 S.Ct. at 453–54; *Brewer v. Williams,* 430 U.S. 387, 403–04, 97 S.Ct. 1232, 1241–42, 51 L.Ed.2d 424

(1977); *Biller v. Lopes,* 655 F.Supp. 292, 297 (D.Conn.), *aff'd,* 834 F.2d 41 (2d Cir. 1987). The only allegation which could suggest impermissible coercion is the claim that police promised to place the petitioner in a drug treatment if he offered his cooperation. *See State v. McCarthy,* 197 Conn. at 256–59, 496 A.2d 513. However, the Connecticut Supreme Court found that the record did not establish that any promises were made by Wilton police, and that the promise of Westport police extended only to charges brought by Westport. *See id.* at 258 and 259 n. 10, 496 A.2d 513. Relevant portions of the transcript support a finding that no promises were made by Wilton police. *See* Suppression Hearing Transcript at 148. The petitioner has not challenged the actions of Westport police. These facts are insufficient to render the petitioner's statements to Wilton police involuntary as a matter of law.

■■■ The Fifth Amendment is not concerned with pressures to confess which emanate from sources other than official coercion. *Oregon v. Elstad,* 470 U.S. at 305, 105 S.Ct. at 1285. A defendant's mental condition, by itself and apart from its relation to official coercion, does not dispose of the inquiry into voluntariness. *Colorado v. Connelly,* 107 S.Ct. at 520. Moreover, a suspect's awareness of all the crimes about which he may be questioned is not relevant to determining the validity of his decision to waive his Fifth Amendment privilege. *Colorado v. Spring,* 107 S.Ct. at 859. In the absence of circumstances which the petitioner could construe as constituting a promise of leniency for cooperating with *Wilton* police, the petitioner's unsupported, and apparently subjective, belief that such a promise was made does not render his admissions to Wilton police involuntary. *Cf. Flittie v. Solem,* 751 F.2d 967, 975 (8th Cir.1985) (Misrepresentations do not necessarily make a statement involuntary.)

■■■ Finally, even if the statements of Westport police can be construed as a promise to obtain medical treatment, *see United States ex rel. Liss v. Mancusi,* 427 F.2d 225, 228 (2d Cir.1970), the petitioner has failed to state a viable claim for habeas relief. A promise of treatment for withdrawl symptoms does not necessarily render a subsequent confession involuntary. *See United States v. Rimka,* 512 F.2d 425 (6th Cir.), *cert. denied,* 422 U.S. 1046, 95 S.Ct. 2663, 45 L.Ed.2d 698 (1975); *cf. United States v. Ritter,* 456 F.2d 178 (10th Cir.1972). The record suggests that, before the petitioner met with Wilton police, Westport police had taken him for treatment of his withdrawal symptoms. *See* Brief of Appellee to Connecticut Supreme Court at 26 (citing Trial Transcript at 130). During questionning by Wilton police, the petitioner appeared to be in fine condition. *See* Transcript of Suppression Hearing at 147; *cf. State v. Hollis,* 450 F.2d 1207, 1209 (5th Cir.1971). The fact that Westport police promised to secure for the petitioner necessary treatment, treatment which police must provide under the Constitution, is insufficient to render his confession inadmissible. *See Jarrell v. Balkcom,* 735 F.2d 1242, 1250 (11th Cir.1984), cert. denied, 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985).

### C. Challenge to Jury Venire

Because the petitioner is now proceeding *pro se,* the Court will consider his improperly submitted challenge to the jury venire. The Connecticut Supreme Court highlighted the petitioner's evidence on this issue as follows:

In support of his claim that he was deprived of his due process right to a jury made up of a fair cross section of the population, the defendant presented expert testimony that, of the 12,351 persons called for jury duty in Fairfield county during the two and one-half year period immediately preceding his trial in April, 1981, only 240, or 1.9 percent, had Hispanic surnames. On the basis of the Hispanic population of Fairfield county as documented by the United States census of 1970, 3.75 percent of the 12,351 potential jurors, or 465 Hispanics, should have been included in the venires. The plaintiff's expert testified that the chance of this disparity occuring random-

ly was less than one in two and one-half million based on "statistical decision theory." The court denied the challenge to the array without elaboration.

\* \* \* \* \* \*

[After rejecting the "statistical decision theory" as more relevant to an equal protection challenge than a due process challenge, the Connecticut Supreme Court proceeded to apply a "substantial impact test," which focuses on whether the asserted underrepresentation substantially affected the composition of the jury. *State v. McCarthy*, 197 Conn. at 251 [496 A.2d 513]. It posited the remaining question as] whether there was such an underrepresentation of Hispanics, compared to their population in the community as a whole, in the pools from which jurors in Fairfield county were drawn during the period from September, 1978, to April, 1981, as to have substantial impact upon the composition of Fairfield juries. We conclude that no such impact has been shown. According to the defendant's figures, of the 12,351 potential jurors during the period examined, 240 or 1.9 percent were Hispanics. The 3.75 percent of Hispanics in the community, if this group were proportionally represented in the jury pool, would have resulted in the inclusion of 465 Hispanics, 225 more than were actually contained in the pool of jurors. The 12,351 veniremen would, if divided into juries of six, which hear cases such as the defendant's, have served 2000 potential juries. See General Statutes Sections 54–82(c), 54–82b(c). Were the 225 missing Hispanic jurors evenly distributed among this number of juries, one more Hispanic would have been available for selection on only one out of nine juries.... [W]e cannot conclude that the underrepresentation of Hispanics in the jury venires of Fairfield county was so substantial as to violate the defendant's due process right to a jury representing a fair cross section of the community.

*State v. McCarthy*, 197 Conn. at 248–53, 496 A.2d 513 (footnotes omitted).

■ These facts do not support a claim for federal habeas relief. Under the Sixth and Fourteenth Amendments, a defendant has a right to a grand or petit jury that reasonably represents the community. *See, e.g., Taylor v. Louisiana*, 419 U.S. 522, 537, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975). However, "in order to show that an equal protection violation has occurred ... the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs." *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977). The petitioner has never claimed to be a member of the Hispanic community. *State v. McCarthy*, 197 Conn. at 251 n. 5, 496 A.2d 513.

■ Moreover, the petitioner's statistics do not suggest a disparity so significant that the venire from which his jury was selected violated his right to due process. Although the Sixth Amendment guarantees that grand and petit juries will be selected from a pool of names which represents a fair cross-section of the community, it does not require that "juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor v. Louisiana*, 419 U.S. at 538, 95 S.Ct. at 702. To prevail on a Sixth Amendment challenge, a petitioner must demonstrate more than a statistical disparity; he must demonstrate a disparity which is legally significant in that it is substantial. *See Anderson v. Casscles*, 531 F.2d 682, 685 (2d Cir.1976).

In *United States v. Jenkins*, 496 F.2d 57 (2d Cir.1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975), the Second Circuit entertained a challenge under the federal Jury Selection and Service Act of 1968. Both the Sixth Amendment and the Act require juries to be "reasonably representative." *See United States v. LaChance*, 788 F.2d 856, 864 (2d Cir.1986), *cert. denied*, — U.S. — 107 S.Ct. 271, 93 L.Ed.2d 248 (1987); *United States v. Hafen*, 726 F.2d 21, 22 n. 1 (1st Cir.), *cert. denied*, 446 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984). In *Jenkins*, the court

found that the fair cross section requirement is a "practical one" which focuses on the "difference in absolute numbers rather than the difference in percentages." 496 F.2d at 66. Accordingly, it held that a statistical discrepancy which amounted to "a difference of one (1) Negro in a panel of 60 jurors is not substantial." *Id.* Thus, *Jenkins* suggests that disparities which do not result in a significant numerical difference in the composition of the actual jury arrays are insufficient to establish a violation of the Constitution. *See Alston v. Lopes,* 621 F.Supp. 992, 997 (D.Conn.1985), *aff'd,* 791 F.2d 255 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1285, 94 L.Ed.2d 143 (1987).

After applying a *Jenkins*-type standard, it was clear to the Connecticut Supreme Court that the petitioner had not demonstrated that the actual impact of the discrepancy he demonstrated is a legally-substantial one. It is likewise clear to this Court. In making this determination, the Court is aware that this Second Circuit recently upheld a similar challenge in *Alston v. Manson,* 791 F.2d 255 (2d Cir.1986). However, *Alston v. Manson* is inapposite for several reasons. First, the petitioner has objected to the number of Hispanics available for juries, while *Alston v. Manson* involved a challenge to the representation of Blacks. Second, *Alston v. Manson* involved an equal protection challenge, while the petitioner's can only be construed as a due process challenge. Under *Jenkins,* the petitioner has failed to demonstrate substantial underrepresentation, and this Court has recently rejected an invitation to regard *Jenkins* as "outmoded" when evaluating the merits of a due process challenge under the Sixth Amendment. *See United States v. Gerena,* 677 F.Supp. 1266, 1274 (D.Conn.1987) (Clarie, J) Memorandum of Decision on Challenge to Jury Selection System; *cf. Villafane v. Manson,* 504 F.Supp. 78, 86 (D.Conn.1980) (Blumenfeld, J.) (Statistical Decision Theory provides useful way to measure intent in equal protection claims.)

### Conclusion

The petitioner's motion in opposition to judgment is DENIED as moot. The petitioner's motion for re-appointment of counsel is DENIED. The petition is DISMISSED. A certificate of probable cause to appeal will not issue because the petitioner's claim presents no questions of substance for appellate review. *See Alexander v. Harris,* 595 F.2d 87, 90–91 (2d Cir. 1979). Any appeal taken from this ruling *in forma pauperis* would not be taken in good faith because such an appeal would be frivolous. 28 U.S.C.Sec. 1915(a); *see Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.